## Public Defense Ass'n et al. v. City of Pittsburgh et al.

*Negligence—Municipalities—Claim for damages—Child injured on public playground—Advice of city solicitor—Veto by Mayor—Settlement—Discretion of council—Act of May 23, 1874.*

1. A bill to restrain the City of Pittsburgh from paying damages for personal injuries to a child in falling from a tree while playing in a municipal playground will be dismissed where the city council, though against the veto of the mayor and the advice of the city solicitor, agreed to compromise the claim for damages after it had directed an independent investigation of the facts which were in dispute.

2. While councils are not bound to follow the advice given by the solicitor, they may not make a gift out of sympathy for claimant, where it clearly appears the city is not liable, and action should be taken in disregard of such advice only in cases where the facts are disputed and council is convinced that a settlement of the claim is for the best interest and to the advantage of the city.

3. The inherent right of the city to settle claims for personal injuries arising out of a tort is not affected by section 5 of the Act of May 23, 1874, P. L. 230, prohibiting the payment of any claim against the city without previous authority of law.

Claim against city for personal injuries. Exceptions *ex parte* defendant to findings of fact and conclusions of law. C. P. Allegheny Co., July T., 1922, No. 162.

Before Evans, Ford and Swearingen, JJ.

*A. E. Anderson,* for plaintiffs.

*Thomas M. Benner,* City Solicitor, and *Sarah M. Soffel,* for defendants.

FORD, J.—The plaintiff association filed exceptions to the fourth and sixth findings of fact and to each of the five conclusions of law. Plaintiff also alleged error in failing to find certain facts and in failing to state certain conclusions of law. No requests for findings of fact or conclusions of law were made prior to the filing of the findings of fact. For the purpose of meeting exceptions *ex parte* defendant, additional facts were by stipulation agreed and made part of the record; further, the stipulation filed provided that the facts as agreed should be considered in connection with all the facts in passing on and in determining the exceptions.

The first exception, being to the fourth finding of fact, is sustained, and, in lieu thereof, we find:

4. *(a)* On July 7, 1921, Donald G. Murray, a boy aged ten years, son of L. L. Murray, commonly with other children, was playing in the Sheraden Playground. While playing, the boy climbed a tree, and after being up the tree, he fell to the ground, his arm was broken and he suffered other injuries. He stated he climbed the tree at the direction of a supervisor of the playground, an employee of the city. This was denied by the supervisor, who claimed that she did not know of the climb, fall and injuries until it was reported to her. There is no allegation of defects in the tree.

*(b)* L. L. Murray presented his claim for $500 for medical attention and other expenses and the injuries to his son, Donald G. Murray, by letter to the City of Pittsburgh, Division of Parks and Playgrounds. The letter was introduced into council and marked "Bill 253." Bill 253 was sent to the law department for an opinion thereon as to the liability of the City of Pittsburgh for said claim. The city solicitor replied as follows:

"Feb. 24, 1922.

"Finance Committee of Council:

"Gentlemen: On Bill No. 253, being a communication from L. L. Murray, of No. 304 Sloan Street, Pittsburgh, Pa., to the City of Pittsburgh, Division of

Public Defense Ass'n et al. v. City of Pittsburgh et al.

Parks and Playgrounds, asking for $500 damages by reason of an accident that occurred to Donald G. Murray, a son of L. L. Murray, who had his arm broken on July 7, 1921, at the Sheraden Playgrounds, beg to advise you as follows:

"That, on July 7, 1921, Donald G. Murray was playing at the Sheraden Playgrounds, and while engaged in playing games with other children, climbed a tree, from which he fell, breaking his arm. The boy claims that he climbed the tree at the request of Miss Abercrombie, one of the playground attendants, and it appears that Mr. Murray is basing his claim against the City of Pittsburgh on this reason. Miss Abercrombie denies that she asked the boy to climb the tree, nor did she see him climb the tree, and she is corroborated by Miss Jean Schuster, one of the other attendants. Miss Abercrombie's attention was first called to the boy by his cries after he fell.

"We are of the opinion that there is no liability on the part of the City of Pittsburgh by reason of this accident, because, in this case, as well as in other playground cases, the children who are engaged in play assume the risks attendant thereto, and although Mr. Murray claims that his boy climbed the tree at the request of Miss Abercrombie, one of the attendants, this is specifically denied by Miss Abercrombie and the other attendant, Miss Schuster, and the circumstances established the fact that there was no negligence chargeable to the City of Pittsburgh, and we so advise you.

"Respectfully yours,
"RICHARD W. MARTIN,
"JHR: An opinion by Mr. Reich."                    "City Solicitor."

A copy of this reply is made part of the bill and marked Exhibit "B." Contrary to such advice, the finance committee caused to be prepared a resolution settling and adjusting the claim for the sum of $350, and affirmatively recommended the same to the council, where it became Bill No. 385, a copy thereof being made part of the bill marked Exhibit "A."

The second exception, being to the sixth finding of fact, is sustained, and we find:

6. Bill No. 385, Exhibit "A," passed by the city council on March 20, 1922, was duly submitted to the Mayor, accompanied by letter of the city solicitor, Exhibit "B," and, after consideration, the Mayor returned the resolution, Bill No. 385, without his approval, setting forth his reason therefor in a letter to the council, a copy of which is made part of the bill and marked Exhibit "C," as follows:

"Pittsburgh, March 24, 1922.
"To the City Council of the City of Pittsburgh:

"I return without my executive approval Bill No. 385, authorizing the payment of $350 to L. L. Murray as damages for an injury suffered by his son at the Sheraden Playgrounds. My reasons are those contained in a communication of the city solicitor to your honorable body, namely, that the city is not liable in any event for risks taken by children in playing on the city's recreation grounds, and the further fact that the city's representatives at the playground deny that they directed or asked the boy to engage in this particular act which was the result of his injury.

"Respectfully submitted,
"W. A. MAGEE, Mayor."

As appears by said Bill No. 385, said sum of $350 is made chargeable to Appropriation No. 42, the "Contingent Fund."

The fifth to the tenth—both inclusive—exceptions, being to the first to fifth conclusions of law, are overruled.

The exceptions from the eleventh to the sixteenth, being in form requests for additional conclusions of law, are refused.

### Discussion.

The questions raised by the exceptions to the conclusions of law are: Was the claim for personal injuries suffered by the boy, Donald G. Murray, within the true intendment and meaning of the Act of May 23, 1874, P. L. 230, and had council a right to pass the resolution, being Bill No. 385, notwithstanding its disapproval by the Mayor?

It is manifest that the Act of 1874 applies to cases wherein the city has been benefited. The law does not require the city to refrain from paying for work, services or materials which the city has received and profited by, even if the claim could not be enforced as a legal liability.

Plaintiff contends that the claim of the boy comes within that part of section 5 of the act which reads: "Nor providing for the payment of any claim against the city without previous authority of law."

With this contention we do not agree. Reading the clause in connection with the entire section, it is clear that the legislative intent was to regulate and authorize the passage of ordinances for payment where a claim is meritorious, in that the benefit was one in which the public participated.

Prior to the approval of the Act of 1874, the city had an inherent right to settle claims for personal injuries arising out of a tort; this right was not affected by section 5 of the act. If a claim against the city was established by the verdict of a jury, or upon admitted facts, there was a reasonable doubt as to whether or not the city was liable; the proper officers have the right to settle and adjust the claim. In the exercise of this right, it is the duty of council to investigate and carefully consider all of the facts and circumstances attending the happening of an accident alleged to have been occasioned by the negligence of city employees; council has no right to make a "sympathetic gift," nor has council a right to adjust a claim when, upon the uncontroverted facts, it appears that the city is not liable.

It is charged that the court erred in not concluding as a matter of law "that if the supervisor (the attendant) did as alleged by the boy, she was the agent of the boy in a governmental capacity and duty, and the city is not liable for the alleged injuries."

It is admitted that Miss Abercrombie was employed by the city as an attendant at the playgrounds. Her duties included a general oversight over the children enjoying the pleasures of the ground. She was discharging a public duty, but it is not alleged, nor would the evidence justify a finding, that if she ordered the boy to climb a tree, she was the agent of the boy. It is to be noted that defendants do not deny liability on the ground that the city was not responsible for the acts of Miss Abercrombie. Donald stated that "he climbed the tree at the request of Miss Abercrombie." This was denied by Miss Abercrombie, who stated that she was not present when he climbed the tree and had no knowledge of his act until after he had fallen to the ground, when her attention was attracted by the cries of children. She is corroborated by Miss Schuster.

It is apparent that the city solicitor accepted the statements made by the attendants, Miss Abercrombie and Miss Schuster, as true, and upon the facts narrated by them he based his opinion "that there was no negligence chargeable to the City of Pittsburgh." If Donald, moved by a childish impulse, climbed, or attempted to climb, the tree and was injured in consequence of the manner in which he acted, the city could not be held liable. Council, however, was not convinced by the opinion filed by the solicitor, nor by the reasons given by the

Public Defense Ass'n et al. *v.* City of Pittsburgh et al.

Mayor for his disapproval of the resolution, and made further inquiry. The nature and scope of the investigation was not shown, but thereafter the resolution authorizing a settlement and adjustment was passed.

The solicitor is the legal adviser of the Mayor and of Council. If, after an investigation, he is of opinion that on the law or on the facts the city is not legally liable for a claim made, he should so advise both the Mayor and Council. Council may not be bound to follow the advice given by the solicitor, but, observing the opinion submitted by him, will safeguard public funds, without prejudice to the rights of claimants, in that they have a full and adequate remedy at law. Action should be taken in disregard of the opinions expressed by the solicitor and the Mayor only in cases when Council is convinced that a settlement of a claim is for the best interest and to the advantage of the city.

In the instant case, the facts were disputed. It may well be, as is urged, that the statements made by the attendants were deserving of the greater credence. Council made an independent investigation, and, as appears by the adoption of the resolution, concluded that the city would be advantaged if a lawsuit was avoided and the city thereby saved the expense, delay and trouble incident to litigation. It does not appear that the members of Council were influenced by improper motives or that they abused their discretion. We are of opinion that on the facts disclosed we would not be justified in interfering with the determination of council. Bill dismissed.

From William J. Aiken, Pittsburgh, Pa.